**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:19-CV-10-CRS-CHL**

**WENDY LAWSON,**
                                                                   **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                      **Defendant.**

### REPORT AND RECOMMENDATION

Before the Court is the Complaint of Plaintiff, Wendy Lawson ("Lawson"), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits and Supplemental Security Income ("SSI"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 12.) Lawson filed a Motion for Summary Judgment on July 27, 2019, (DN 15), and the Commissioner filed a Fact and Law Summary on November 8, 2019, (DN 23).[1] Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned Magistrate Judge **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED** and that Lawson's Motion for Summary Judgment (DN 15) be **DENIED**.

**I.**      **FINDINGS OF FACT**

Lawson filed an application for disability insurance benefits and for SSI on August 28, 2015. (DN 10-5, at PageID # 345-56.) Administrative Law Judge ("ALJ") Candace A. McDaniel

---

[1] The Court's April 17, 2019, Order required Lawson to "set forth his/her position by an appropriate memorandum of law" and directed that "[a]ny such memorandum shall be accompanied by a Fact and Law Summary on the form supplied by the Court." (DN 12.) Lawson did not file a Fact and Law Summary as required. While Lawson's memorandum in support of her motion for summary judgment (DN 15-1) provides a sufficient articulation of the reasons Lawson challenged the Commissioner's final decision to allow the undersigned to issue the instant recommendation, Lawson and her counsel are encouraged to read and comply with all provisions of any order entered in this or any other action in the future.

conducted a hearing on Lawson's application on December 21, 2017.  (DN 10-2, at PageID # 97-140.)  In a decision dated May 14, 2018, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether Lawson was disabled.  (*Id.* at 58-70.)  In completing this evaluation, the ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.  (*Id.* at 60.)

(2) The claimant has not engaged in substantial gainful activity since July 23, 2015, the alleged onset date.  (*Id.*)

(3) The claimant has the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, chronic obstructive pulmonary disease (COPD)/asthma, and obesity.  (*Id.* at 61.)

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 62.)

(5) [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she would require the ability to alternate positions at 30-60 minute intervals with the change taking one to three minutes without leaving the workspace, she could occasionally reach overhead with the left arm; she could frequently, but not constantly[,] reach out in front and side to side with the left arm; she could frequently, but not constantly[,] handle, finger, and feel with the left dominant hand; she could never climb ladders, ropes, or scaffolds; she could occasionally stoop, crouch, crawl, kneel, and climb ramps or stairs; she should avoid concentrated exposure to extremes of cold and heat, fumes, odors, dusts, gases, and pulmonary irritants; she could not be exposed to hazards of unprotected heights or dangerous moving machinery; and she could only occasionally operate foot pedals with both the right and left feet. (*Id.* at 63.)

(6) The claimant is unable to perform any past relevant work.  (*Id.* at 68.)

(7) The claimant was born on March 24, 1967 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.  (*Id.*)

(8) The claimant has at least a high school education and is able to communicate in English.  (*Id.*)

    (9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

    (10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

    (11)    The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2015, through the date of this decision. (*Id.* at 69.)

Lawson requested review by the Appeals Council, which denied her request for review on November 8, 2018. (DN 10-2, at PageID # 42-49; DN 10-4, at PageID # 340-43.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2019); *see also* 42 U.S.C. § 405(h) (2018) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Lawson is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Lawson filed this action on January 7, 2019. (DN 1.)

## II.    CONCLUSIONS OF LAW

The Social Security Act authorizes payments of disability insurance benefits and SSI to persons with disabilities. *See* 42 U.S.C. § 401 – 434, 1381-1383f (2018). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2019).

A.      **Standard of Review**

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

B.      **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2019). In summary, the evaluation process proceeds as follows:

(1)     Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)     Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. §§ 404.1509, 416.909 (2019).

    significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

  **C.** **Lawson's Contentions**

Lawson alleged that the ALJ erred in determining her RFC for multiple reasons. (DN 15-1, at PageID # 1365-68, 1369-71.) Lawson also argued that the hypothetical question the ALJ posed to the vocational examiner ("VE") was deficient. (*Id.* at 1368-69.) The undersigned will address each of Lawson's contentions below.

    **1.** **RFC Determination**

Lawson argued that the ALJ's RFC finding was unsupported by substantial evidence. Here, the ALJ found that Lawson had the RFC to perform light work except that Lawson would require the ability to alternate positions at specified intervals, was limited in her ability to reach

5

with and use her left arm and hand, and was limited in her ability to operate foot pedals, among other restrictions. (DN 10-2, at PageID # 63.) An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations and is based on a consideration of the medical source statements and all other evidence in the record. 20 C.F.R. §§ 404.1529, 416.929 (2016); 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946 (2019). Lawson alleged that the ALJ made several errors in her RFC determination, and the undersigned will separately address these arguments below.

### a) Lawson's Complaints of Pain

Lawson argued that "[t]he ALJ distorted the nature and severity of [her] impairments by under-reporting or ignoring the medical evidence of ongoing, severe pain and by exaggerating her pain relief." (DN 15-1, at PageID # 1359-60.) Lawson further argued that the ALJ failed to appropriately conduct step two of the proper analysis regarding pain.

A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to

relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).

Here, the ALJ concluded that while there were "medically determinable impairments that could reasonably be expected to cause" the symptoms alleged by Lawson, her statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (DN 10-2, at PageID # 64.) The ALJ then assessed and discussed the medical evidence of record related to her RFC determination. (*Id.* at 63-68.) For example, the ALJ noted that despite a "lengthy history of pain management and physical therapy for her lower back, neck, and extremity pain, as well as COPD/asthma," Lawson's medical records also contained "evidence of good response to treatment, intact use of all extremities, and no long-term use of an assistive device for ambulation . . . ." (*Id.* at 64.) The ALJ noted that pain management records documented that Lawson received "significant relief with routine epidural steroid injections and medication management." (*Id.*) The ALJ cited to pain management records in support of her conclusion. (*Id.* at 65.)

Lawson argued that the ALJ ignored and/or mischaracterized the medical records of her treatment with pain management specialist Dr. Jeffrey Berg. (DN 15-1, at PageID # 1360-61.) She also contended that the ALJ adopted terminology such as "significant relief" and "well controlled" for Lawson's pain and treatment that are unsupported by the medical records. (*Id.* at 1361.) A review of the medical records from Dr. Berg supports the ALJ's conclusion that Lawson responded to epidural steroid injections, reported 50% to 70% relief with regular injections, and functional improvement in daily activities. (DN 10-2, at PageID # 65.) On no less than fourteen occasions, Lawson reported a "functional improvement in her daily activities" to Dr. Berg, including

7

numerous occasions after her July 23, 2015, alleged onset date and as recently as three months before her hearing with the ALJ in December 2017. (DN 10-7, at PageID # 694, 761, 772, 781, 784, 788, 794, 792; DN 10-8, at PageID # 1119, 1122, 1125, 1134, 1146; DN 10-9, at PageID # 1185, 1249, 1252.) Lawson likewise reported between 50% and 70% pain relief after epidural steroid injections as to various parts of her body, though typically reported that her symptoms eventually worsened after receiving an injection and subsequently received another injection. (DN 10-7, at PageID # 685, 688, 691, 694, 696, 699, 701, 761, 763, 766, 769, 772, 774, 777, 779, 781, 790-92, 794; DN 10-8, at PageID # 1119, 1122, 1125, 1128, 1137, 1146; DN 10-9, at PageID # 1185, 1252.) Additionally, she reported on multiple occasions that her cervical, shoulder, and or ongoing back pain was "controlled" with either her current medications or her walking routine in combination with her medication. (DN 10-7, at PageID # 699, 761, 777; DN 10-8, at PageID # 1146; DN 10-9, at PageID # 1185, 1252.) Indeed, as recently as four-and-a-half months before her hearing before the ALJ, Lawson had reported to Dr. Berg that "[h]er ongoing back pain ha[d] been controlled with her walking routine and medication." (DN 10-9, at PageID # 1185, 1252.) Based on these records, the undersigned finds that the ALJ did not misread Dr. Berg's records or overly inflate the extent to which medication or treatment improved Lawson's pain. The ALJ did not indicate in her decision that treatment eliminated her pain, merely that it helped control the same, and while Lawson may not agree that her pain relief was "significant," that conclusion is consistent with the medical evidence of record.

Though Lawson highlighted her various reported pain levels during her visits to Dr. Berg as evidence the ALJ failed to consider in assessing Dr. Berg's records, the "ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite to specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)

8

(quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Given the ALJ's extensive discussion and analysis of Dr. Berg's records and the fact that he did not conclude Lawson's pain was fully alleviated, the undersigned finds there is no indication that the ALJ ignored the evidence highlighted by Lawson. Further, if the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way." *Smith*, 893 F.2d at 108. As the undersigned finds that the ALJ's conclusions regarding Dr. Berg's records were supported by substantial evidence, the undersigned may not make further inquiry into the same.

Lawson further challenges the ALJ's conclusion that she had "intact use of her extremities," citing to the foot problems that developed shortly after she applied for benefits. (DN 15-1, at PageID # 1361-65.) The ALJ acknowledged in her decision that Dr. Berg's examinations showed right positive straight leg raise, decreased ankle reflexes, decreased sensation to light touch in the right foot, and decreased grip strength left compared to right. (DN 10-2, at PageID # 65.) However, the ALJ also cited to records from Lawson's family physician noting normal gait and station, including a record dated approximately one month prior to the hearing before the ALJ. (*Id.*; *see also* DN 10-7, at PageID # 716, 723, 727, 730, 732, 735, 738; DN 10-8, at PageID # 893, 904, 913, 917, 920, 923, 926, 934, 936, 940, 943, 945, 949, 955, 1158, 1161, 1165, 1167; DN 10-9, at PageID # 1267, 1270, 1274, 1276, 1325, 1330, 1333, 1336, 1339.) Indeed, even the records from Dr. Masternick, Lawson's podiatrist, show that as recently as one month before the hearing, Lawson denied difficulty walking and denied foot pain. (DN 10-9, at PageID # 1342.) Because the record contains substantial evidence to support the ALJ's conclusion, the undersigned finds no error in the same.

Finally, Lawson alleged the ALJ failed to appropriately assess her daily activities in determining how her pain affected her capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ noted in her decision that Lawson testified that she works part-time in a daycare kitchen and serves twenty to forty-five children though she is able to rest in a chair during her shifts, can do light chores, can care for her personal needs, and can drive. (DN 10-2, at PageID # 64.) In reviewing the third-party reports in the record from Lawson's friend and mother, the ALJ highlighted testimony that Lawson is able to care for herself, fix simple meals, do light chores, go out alone, drive, shop, manage money, and spend time with others. (*Id.* at 10-2, at PageID # 67-68.) However, the ALJ noted that these activities when combined with the medical evidence of record do not support that Lawson is as limited as she alleges. (*Id.*) Though Lawson alleged that the ALJ did not properly consider how pain limited what she could do on a daily basis (DN 15-1, at PageID # 1371), the undersigned finds that the ALJ properly considered Lawsons's daily activities, in addition to the record as a whole, in making a determination as to her RFC. Specifically, while Lawson's activities do not demonstrate a total lack of limitation, they are not overall indicative of disabling pain.

Based on the foregoing, the undersigned finds that the ALJ did not err in her assessment of Lawson's pain.

      b)  **Rejection of Lawson's Testimony**

Lawson argued that the ALJ improperly adjusted her need to alternate between sitting and standing to a less restrictive alternative than Lawson testified was necessary. (DN 15-1, at PageID # 1358-59.) The ALJ found that Lawson would need to be able to "alternate positions at 30-60 minute intervals with the change taking one to three minutes without leaving the workspace . . . ." (DN 10-2, at PageID # 63.) Lawson testified at the hearing that during an approximately six hour

to six hour and forty-five minute shift from 6:15 AM to 12:30 PM or 1:00 PM she would need to sit down and rest approximately twelve to fifteen times, which resulted in a need to change position every thirty minutes as opposed to every thirty to sixty minutes. (*Id.* at 111, 125-26; DN 15-1, at PageID # 1359-59.) However, Lawson cited to neither any authority requiring the ALJ to adopt a claimant's version of his or her limitations nor any restriction imposed upon her by any medical provider regarding a need to change positions at specified intervals. Instead, she merely asserted conclusively that "[h]er medical records support her testimony." (DN 15-1, at PageID # 1359.)

In her discussion of Lawson's RFC, the ALJ specifically noted her testimony that she could sit and rest during her shifts but then concluded that Lawson's "statements concerning the . . . limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (DN 10-2, at PageID # 64.) The ALJ noted in support that despite Lawson's history of pain management and physical therapy, when one considered evidence of "good response to treatment, intact use of all extremities, and no long-term use of an assistance device for ambulation," the record did not warrant further limitations. (*Id.*) The ALJ specifically addressed the pain management records discussed above in which Lawson reported her cervical and lumbar pain was controlled with medication, with up to 50% to 70% relief when she was getting epidural steroid injections. (*Id.* at 65-66.) The ALJ specifically stated in her decision that the limitations imposed regarding the option to alternate positions were imposed to accommodate any residual complaints by Lawson. (*Id.* at 66.) As noted, above, the undersigned has already found the ALJ's review of Lawson's pain and assessment of her pain management records to be supported by substantial evidence. Given this evidence and analysis, the undersigned finds that the ALJ's limitation regarding Lawson's need to

11

change positions, including her rejection of her stated limitation, was supported by substantial evidence.

### c) Narrative Discussion Requirements

Lawson also argued that the ALJ failed to comply with the narrative discussion requirements set forth in SSR 96-8p by failing to conduct a function-by-function analysis of her physical exertional limitations. SSR 96-8p: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474 (July 2, 1996). SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34,478. It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34,477. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

Lawson alleges that the ALJ failed to comport with SSR 96-8p because she failed to discuss her abilities to stand and walk during an eight-hour work day. (DN 15-1, at PageID # 1367.) The ALJ restricted Lawson to a limited range of light work, which by definition requires "a good deal of walking or standing . . . ." 20 C.F.R. §§ 404.1567(b), 416.967(b). By failing to include a specific limitation regarding standing and walking except for the limitation regarding Lawson's need to change positions at specified intervals, the ALJ implicitly rejected Lawson's contention that she had any functional limitation in this category. Though Lawson contended this was error given her own testimony, she failed to identify any treatment provider who gave her any limitations

12

in her ability to stand or walk. As noted above, the ALJ already accounted for Lawson's testimony regarding her ability to sit and stand by including a limitation that she must be able to change positions at specified intervals. Further, regarding her ability to walk, the ALJ discussed multiple times in her opinion that Lawson had a normal gait and station, intact use of her extremities, and did not require an assistive device to walk. Given these findings, the undersigned finds that the ALJ adequately comported with the requirements of SSR 96-8p and that Lawson has failed to demonstrate reversible error regarding the same.

### d) Substantial Evidence Generally

To the extent that anything in Lawson's motion could be construed as a general challenge to the existence of substantial evidence to support the ALJ's RFC finding, the undersigned finds that the ALJ's determination of Lawson's RFC was supported by substantial evidence. The ALJ cited to medical evidence of record, including the pain management records discussed at length above, Lawson's history of physical therapy, the records of her family physician and her podiatrist, as well as her own testimony and third-party function reports in the record, in support of her conclusion. Further, the ALJ assessed the opinion evidence of record, including the opinion from the state agency physicians, ultimately incorporating more limits than originally imposed by those physicians given evidence supporting higher limitations. (DN 10-2, at PageID # 67.) Because the undersigned finds that substantial evidence supports the ALJ's determination of Lawson's RFC, he cannot even assess whether the other evidence Lawson cited to in the record likewise supports the opposite conclusion. *Smith*, 893 F.2d at 108

### 2. Hypothetical Question Posed to VE

Finally, Lawson argued that the hypothetical the ALJ posed to the VE did not adequately address her limitations. (DN 15-1, at PageID # 1368.) At step five, the ALJ has the burden of

demonstrating that there exist a significant number of jobs in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2019); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays a claimant's individual physical and mental impairments." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

Lawson argued that the ALJ's hypothetical did not properly reflect her need to change positions or her ability to stand and walk. (DN 15-1, at PageID # 1368.) Lawson cited to *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), in support of her position that an ALJ"s hypothetical must be a "complete assessment" of a claimant's physical state. (*Id.*) However, the Sixth Circuit has subsequently explained that *Howard* does not "require hypothetical questions to vocational experts to include lists of claimants' medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Instead, it need only reference a claimant's limitations. *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001) and *Varley*, 820 F.2d at 780). Further, an ALJ's hypothetical need only include those limitations that he or she has accepted as

14

credible. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993); *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir.2013). As noted above, the undersigned has already found that the ALJ's imposition of a lesser restriction than that posited by Lawson on her need to change positions and the ALJ's imposition of no limitation on her ability to walk was supported by substantial evidence. Accordingly, the undersigned finds that the ALJ properly omitted limitations that she deemed not to be credible in posing her hypothetical to the VE.

Therefore, the undersigned concludes that the VE's testimony constitutes substantial evidence to support the ALJ's step five finding of the availability of other work in the economy that Lawson was capable of performing. *Wilson*, 378 F.3d at 548-49. Accordingly, the undersigned finds no error in the ALJ's step five analysis.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED** and that Lawson's Motion for Summary Judgment (DN 15) be **DENIED**.

February 12, 2020

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).