UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WENDY LAWSON                                                                 PLAINTIFF

v.                                                                   NO. 3:19-CV-10-CRS

ANDREW M. SAUL,
Commissioner of Social Security                                   DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court for consideration of the Findings of Fact, Conclusions of Law, and Recommendation of the United States Magistrate Judge (the "report") in this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial by the Commissioner of Social Security ("Commissioner") of plaintiff Wendy Lawson's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").

The matter was referred to the United States Magistrate Judge for findings and recommendation. The magistrate judge conducted a review of the findings set forth in the final decision of the Commissioner, concluding that substantial evidence supported the findings of the Administrative Law Judge ("ALJ") and recommending that the Commissioner's decision be affirmed. DN 24. Lawson has filed objections to the magistrate judge's report which we address below, conducting a de novo review of those portions of the magistrate judge's report to which the claimant objects, in accordance with 28 U.S.C. § 636(b)(1)(C).

By way of background, Lawson was 48 years old on July 23, 2015 when she allegedly became disabled. Lawson filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on August 28, 2015. Her claims for benefits were initially denied on

October 23, 2015 and were denied on reconsideration on March 30, 2016. Lawson requested and was given a hearing before the ALJ on December 21, 2017 at which time she appeared, represented by counsel, and gave testimony. Testimony was also taken from an impartial vocational expert who also appeared at the hearing. On May 14, 2018, the ALJ issued a written opinion evaluating the evidence under the required 5-step process and concluding that

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 28, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on August 28, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

DN 10-2, p. 13, PageID # 70.

We need not recount the ALJ's entire analysis here, as it is described in detail in the magistrate judge's report. Instead, we focus on the issues raised by Lawson in objection to the magistrate judge's findings and recommendation. Lawson's objections challenge the magistrate judge's conclusion that substantial evidence in the administrative record supports the ALJ's findings concerning Lawson's level of pain relief and her limitations. Lawson raises three particular points in her objections: (1) the ALJ's conclusion concerning control of Lawson's pain is not supported by substantial evidence; (2) the ALJ's conclusion that Lawson retained the residual functional capacity to perform full-time light work, with the limitations identified by the ALJ, was in error; and (3) Lawson's family physician's treatment notes are not credible and competent and should not have been relied upon by the ALJ. DN 25.

The ALJ found that Lawson has the severe impairments of (1) cervical degenerative disc disease, (2) lumbar degenerative disc disease, (3) chronic obstructive pulmonary disease (COPD)/asthma, and (4) obesity. DN 10-2, p. 4, PageID # 61. The ALJ further noted that

> The record also indicates that the claimant has been diagnosed with and/or treated for conditions such as status/post left rotator cuff repair, left foot neuroma, Achilles tendinitis, plantar fasciitis, left ankle sprain with tendinitis, hypothyroidism, history of Graves disease, cushingoid appearance, hypertension, hyperlipidemia, obstructive sleep apnea, sinusitis, allergic rhinitis, hypokalemia, benign neoplasm of the skin, cellulitis, vitamin B12 deficiency, and pharyngitis. (Exhibits 1F, 4F, 12F through 14F, 17F, 19F, 24F, 25F, and 28F through 31F). However, the claimant has increased function and was happy with the results of her left rotator cuff repair; she had improved left foot symptoms with conservative treatment including physical therapy; and she remained ambulatory without long-term use of an assistive device. Furthermore, it appears the conditions listed herein were either acute in nature and treated symptomatically or medically managed without evidence of significant, ongoing functional limitations or complications that lasted or were expected to last 12 consecutive months. Therefore, the record supports finding the impairments have not caused more than minimal limitation in the claimant's ability to perform basic work activities for 12 consecutive months.

*Id.* Lawson has not challenged these findings.

Lawson testified at the hearing primarily about back and extremity issues and indicated she has limited ability to stand, walk, and lift items. As noted by the magistrate judge, the ALJ found that Lawson's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Lawson's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. DN 10-2, p. 7, PageID # 64.

More specifically, the ALJ noted the factors set forth in 20 CFR 404.1529(c) and 416.929(c) which must be considered in addition to the objective medical evidence when assessing the credibility of the claimant's statements, and then made the necessary assessment. *See* DN 10-2, p. 7, PageID #64.

First, we note that the ALJ stated:

> [T]he claimant's sever physical impairments warrant limiting her to less than a full range of light work with the ability to alternate positions, left upper extremity restrictions, limitations on the use of foot pedals, and numerous postural and

> environmental limits. While the record documents the claimant's lengthy history of pain management and physical therapy for her lower back, neck, and extremity pain, as well as COPD/asthma, given evidence of good response to treatment, intact use of all extremities, and no long-term use of an assistive device for ambulation, the undersigned finds that no further limitations are warranted.

DN 10-2, p. 7, PageID # 64.

The ALJ noted that "[Lawson] has a lengthy history of multilevel degenerative disc disease dating back to at least 2012 (Exhibit 7F)." DN 10-2, p. 8, PageID #65. The ALJ recounted the results of an MRI of the cervical spine done approximately 18 months prior to the alleged onset date revealing "multilevel changes with disc protrusion at C4-C5, diffuse disc bulges at C5-C7, mild to moderate compromise of the right lateral recess at C4-C5, and moderate bilateral neural foraminal narrowing at C5-C6." *Id.* She went on to discuss the medical evidence in detail documenting Lawson's course of treatment for chronic pain and other symptoms. DN 10-2, pp. 7-10, PageID #s 64-67. The ALJ stated that

> In the 12 months prior to the alleged onset date, the claimant was prescribed medications and she regularly received cervical and lumbar epidural steroid injections. She typically reported 50 – 60% relief for at least four or five months (Exhibit 2F). Exam findings were positive for right positive straight leg raise, decreased ankle reflexes, decreased sensation to light touch in the right foot, lumbar paraspinous tenderness, cervical spine and shoulder tenderness, and decreased grip strength left compared to right. However, the claimant typically reported her cervical and lumbar pain was controlled with medication and she consistently described functional improvement in daily activities with her pain management regimen.

DN 10-2, p. 8, PageID #65. The ALJ considered a plethora of medical records documenting Lawson's episodic returns for epidural treatment and medication management which in combination were reported to provide a level of control of her cervical and lumbar pain. Her returns for treatment for increased pain in a given area of her body were usually four to five months after the last treatment. She would report a current pain level of 5 to 8, and Dr. Berg

would invariably perform another epidural procedure in the painful area, noting that this course of treatment had previously yielded 50 to 70% reduction in her pain.

In assessing the record as a whole, the ALJ considered Lawson's testimony concerning her back and extremity issues and her assertion that she has a limited ability to stand, walk and lift items. The ALJ considered her intact ability to ambulate, no long-term need of an assistive device, her ability to work part-time in a daycare kitchen serving 20 to 45 children per day, to engage in other daily activities such as driving, going out alone, making purchases, doing light chores, fixing simple meals, taking care of herself, reading, watching TV, and to maintain a simple walking and stretching routine. The ALJ indicated that, while the symptoms were not corroborated in the medical records, he accounted for her non-severe complaints of left arm numbness post-rotator cuff surgery and left foot issues from tendonitis/ankle sprain with upper and lower extremity limitations and option to alternate positions on the job. The ALJ also included environmental limitations to account for Lawson's history of non-serious respiratory issues related to asthma/COPD.

> The ALJ found that
>
> Around the alleged onset date, the claimant reported her pain medication was working, but not lasting., at which time her medication was increased. (Exhibit 2F). Notably, pain management records spanning late 2015 through late 2017 typically indicate that the claimant continued to report 50-70% relief in radiating leg pain, arm pain, and shoulder pain with regular epidural steroid injections every few months (Exhibits 7F, 18F, 21F, 26F, and 33F). Despite occasional complaints of worsened pain or further examination findings, the claimant continued to report well-controlled neck and low back pain with a walking routine and medication, with functional improvement in daily activities and no significant side effects (Exhibits 7F, 18F, 21F, 26F, and 33F). In fact, recent late 2017 pain management records show that the claimant does a simple walking routine and has maintained normal gait and stance (Exhibits 26F and 33F).

The magistrate judge recounted in detail in his report the record evidence relied upon and supporting the ALJ's findings. After fulsome evaluation of all of the relevant information, the ALJ concluded that

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 405.1567(b) and 416.967(b) except she would require the ability to alternate positions at 30-60 minute intervals with the change taking one to three minutes without leaving the workspace, she could occasionally reach overhead with the left arm; she could frequently, but not constantly reach out in front and side to side with the left arm; she could frequently, but not constantly handle, finger, and feel with the left dominant hand; she could never climb ladders, ropes, or scaffolds; she could occasionally stoop, crouch, crawl, kneel, and climb ramps or stairs; she should avoid concentrated exposure to extremes of cold and heat, fumes, odors, dusts, gases, and pulmonary irritants; she could not be exposed to hazards of unprotected heights or dangerous moving machinery; and she could only occasionally operate foot pedals with both the right and left feet.

DN 10-2, p. 6, PageID # 63.

The magistrate judge's report thoroughly investigated the foundation in the record for the ALJ's findings concerning Lawson's chronic pain and other physical symptoms. The magistrate judge astutely noted that "The ALJ did not indicate in her decision that treatment eliminated [Lawson's] pain, merely that it helped control the same, and while Lawson may not agree that her pain relief was 'significant,' that conclusion is consistent with the medical evidence of record." DN 24, p. 8, PageID # 1409. We find no error in the magistrate judge's conclusion that substantial evidence supports the ALJ's findings.

The magistrate judge correctly determined that the ALJ's decision was supported by substantial evidence, even if some evidence could conceivably support an alternate conclusion. Lawson takes issue with the ALJ's description of the level of Lawson's pain management as "*well*-controlled" or "significant." Indeed, Lawson argues in her objections that "one cannot read [Dr. Berg's] records as supporting that Ms. Lawson experienced *significant* relief of her

pain or that it was *controlled enough to allow her to perform light work…"* DN 25, p. 3, PageID #1419. Lawson urges that the ALJ "cherry-picked" facts in reaching his RFC finding and conclusion that Lawson is "not disabled." The magistrate judge found, and we agree, that the ALJ did a thorough evaluation of the record in its entirety, and that there is substantial evidence in the record to support the ALJ's statement (DN 10-2, p. 11, PageID # 27) that

> As discussed throughout this decision, the undersigned has carefully read and considered all evidence in the record and finds that given the objective and clinical findings, testimony, daily activities, and opinions, the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence than with the claimant's allegations.

The ALJ was clearly within the "zone of choice" in his analysis which cannot be disturbed by this court. *Buxton v. Comm'r of Social Sec.*, 246 F.3d 762, 773 (6th Cir. 2001).

The ALJ took into consideration work-related limitations resulting from Lawson's impairments, specifically stating that "to account for her complaints and the positive examination findings [of positive right straight leg raise, tenderness, and decreased grip strength and ankle reflexes], the undersigned has limited the claimant to less than a full range of light work with the option to alternate positions with postural, environmental, reaching, manipulative, and lower extremity limitations."  As noted by the magistrate judge, Lawson has not identified any functional limitations mandated by any of her treating sources; she states only that "the medical records" support her contention that she is more limited in standing and walking and the need to change positions than is accommodated in the ALJ's findings.

Lawson adds an argument not raised before in this case.  She contends that the notes of Dr. Sosnin, Lawson's family practice physician, indicating that Lawson's gait and station were normal are unreliable and should have been disregarded by the ALJ and, subsequently, the magistrate judge, in evaluating medical evidence concerning Lawson's claimed limitations in her

ability to stand and walk. The ALJ identified these family practice notes in addition to similar notes from September and November of 2017 from Dr. Berg that she had normal gait and stance and continued a simple walking and stretching routine as part of her treatment for pain. (DN 10-2, p. 8, PageID # 65).

Lawson asks the court to look behind the text of the notes and evaluate the underlying source of information upon which the note is based. She contends that in looking at Sosnin's records as a whole, it is apparent that the entries for the physical examination section of his report is computer-generated and always indicates negative findings, and thus no evaluation of gait and station appears to ever have actually been performed.

First, this argument simply assumes that consistently negative findings in the reports indicate that no physical examinations were performed. Even accepting that argument, Lawson has offered no authority for the proposition that this court may go behind the medical records in the way she proposes. To do so would be no different than questioning the competency of a technician in performing an MRI to challenge a negative MRI result. This is a novel idea, but we have been afforded no basis to do it.

In any event, the notes from Dr. Sosnin may be disregarded and substantial evidence supporting the ALJ's decision remains. The ALJ relied upon other evidence that Lawson exhibited normal gait and station (Berg Notes, September and November 2017) and that Lawson denied difficulty walking and foot pain in a follow-up visit for heel and ankle pain with her podiatrist one month prior to the hearing (Masternick Notes, 11/21/2017). We thus find that Lawson's argument does not identify reversible error in the ALJ's decision.

For these reasons set forth herein, this court concludes that magistrate judge's report was correct in concluding that the ALJ's decision is supported by substantial evidence. Lawson's

objections to the magistrate judge's report are without merit and will be denied. The magistrate judge's report will be accepted and adopted in its entirety. A separate order and judgement will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

March 18, 2020

**Charles R. Simpson III, Senior Judge
United States District Court**